UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-05352-CAS-MBKx | Date | November 9, 2026 |
| Title | Mid Valley Towing Inc v. City of San Fernando et al | | |

| | | |
|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | |
| Catherine Jeang | Amy Diaz | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Kris Demirjian | Alexis Hall |

**Proceedings:** ZOOM HEARING RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (Dkt. 19, filed on October 8, 2026)

## I. INTRODUCTION

On May 18, 2026, plaintiff Mid Valley Towing Inc. ("plaintiff" or "MVT") initiated this action against defendants City of San Fernando, Nick Kimball, Richard Padilla, Fabian Valdez, CJ Chiasson, Peter Aguirre, Mary Mendoza, Mary Solorio, Joel Fajardo, Victoria Garcia, Patty Lopez, and Does 1 through 10, inclusive (collectively, "defendants"). Dkt. 1. On September 25, 2026, plaintiff filed its First Amended Complaint. Dkt. 18 ("FAC").

Plaintiff asserts three claims for relief pursuant to 42 U.S.C. § 1983: (1) Fourteenth Amendment Equal Protection against defendants Valdez, Kimball, Fajardo, Chiasson, Aguirre, and DOES 1-10; (2) First Amendment Retaliation against all defendants; and (3) municipal liability against the City of San Fernando. See generally FAC.

On October 8, 2026, defendants moved to dismiss plaintiff's FAC. Dkt. 19 ("Mot."). On October 19, 2026, plaintiff filed its opposition. Dkt. 20 ("Opp."). On October 26, 2026, defendants filed their reply. Dkt. 22 ("Reply").

On November 9, 2026, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

This action arises from City of San Fernando's award of its exclusive towing franchise to the same incumbent that has held it since 1996.

### A. The City's Towing Franchise and Prior Awards

Plaintiff Mid Valley Towing, Inc. ("plaintiff") is a Jewish-owned towing company that has operated for more than thirty-four years and provides law-enforcement towing services to several agencies, including the California Highway Patrol, the Glendale Police Department, and the Los Angeles County Sheriff's Department. FAC ¶¶ 5, 15-17. Plaintiff performs a municipal towing contract for the City of Glendale that is larger than the San Fernando franchise. Id. ¶¶ 15, 17.

Defendant City of San Fernando (the "City") awards a single exclusive towing franchise approximately every five years. Id. ¶ 18.

Black & White Towing, Inc. ("Black & White") has held the franchise since approximately 1996 and received every subsequent award. Id. ¶ 19.

Plaintiff submitted proposals in 2009, 2014, 2019, and 2025 but was not selected in any of those cycles. Id. ¶ 20. Plaintiff alleges that the City became aware of its Jewish ownership during the 2009 procurement process and thereafter plaintiff experienced disparate treatment. Id. ¶ 21. At the December 2019 City Council meeting, plaintiff and another bidder raised concerns about the "irregularities" in the contracting process. Id. ¶ 22.

### B. The Incumbent

Plaintiff alleges conflicts of interest involving Black & White. Robert Ordelheide, a former San Fernando Chief of Police and towing contract administrator, received payments from Black & White while serving as Chief and recommending the company for the 2009 franchise award. Id. ¶¶ 23-25. Plaintiff alleges that Ordelheide subsequently acquired ownership and control of Black & White, but his ownership was not disclosed in a California Secretary of State filing until 2024. Id. ¶¶ 27-30. Plaintiff further alleges that although the City's franchise agreement requires the franchisee to disclose its ownership and to obtain the City's written approval before any transfer or

change of control, the City did not enforce those requirements with respect to Black & White. Id. ¶¶ 32-33.

In 2021, the U.S. Department of Justice brought an action against Black & White concerning the unlawful sale of military servicemembers’ vehicles. Id. ¶ 34. The City’s subsequent Request for Qualifications (“RFQ”) required consideration of each proposer’s character and integrity, including complaints of poor customer service, unethical business practices, and unlawful conduct. Id. ¶¶ 35-37.

### C. The 2025 Procurement and Evaluation Process

In 2025, the City solicited proposals for a towing franchise covering 2025 through 2029. Id. ¶ 42. The RFQ established evaluation criteria and required inspection of each proposer’s vehicle-storage and evidence-storage areas. Id. ¶¶ 43-44. Plaintiff and Black & White were the only two proposers. Id. ¶ 46.

Defendant Fabian Valdez, the City’s Chief of Police, participated in the evaluation panel’s work and transmitted its recommendation to the City Council. Id. ¶¶ 7, 47. Defendant CJ Chiasson administered the solicitation, including communications with proposers and issuance of the Notice of Intended Award. Id. ¶ 10. Defendant Nick Kimball, the City Manager, was responsible for administering City procurements and reviewing and deciding bid protests. Id. ¶ 8. Under the City’s procurement rules, the City was required to notify proposers of the intended award, allow a five-business-day protest period, provide for review and a written decision by the City Manager, and permit an appeal to the Council. Id. ¶¶ 38-41.

Plaintiff alleges on information and belief that, on or about May 1, 2025, while the proposals were being evaluated, defendant Joel Fajardo, a councilmember, stated that he would rather see the contract go to someone the City knew than to “another Jew coming into the city to make money.” Id. ¶¶ 48-49.

The following day, defendant Peter Aguirre inspected plaintiff’s facility at approximately 12:30 p.m., when management was at lunch and drivers were out on calls. Id. ¶¶ 51-52. Plaintiff alleges that defendant Aguirre spent approximately seventeen minutes at the facility, spoke with a dispatcher rather than management, and did not inspect its operational evidence-storage warehouse, which could accommodate approximately forty vehicles. Id. ¶¶ 52-54. Defendant Aguirre subsequently represented

to the Council that he had spoken with a supervisor that the evidence-storage area was unavailable, and that plaintiff had only four trucks and insufficient staff. Id. ¶¶ 55-56. Plaintiff disputes those representations. Id. Plaintiff received zero points for its evidence-storage area and one point each for experience and financial strength. Id. ¶¶ 57-59.

Plaintiff further alleges that Black & White received equal or higher scores in several categories despite its history of federal enforcement proceedings and lower public customer-service ratings. Id. ¶¶ 60-61. Approximately two months after the inspection, plaintiff obtained a California Highway Patrol evidence-storage contract at the same facility. Id. ¶ 16.

### D. The Franchise Award and Subsequent Events

The RFQ initially identified April 7, 2025 as the tentative award date, but the item did not appear on that day's City Council agenda. Id. ¶¶ 45, 62. In response to plaintiff's inquiry, defendant Chiasson stated that applicants would be notified once a new date was set. Id. ¶¶ 55-56. Plaintiff alleges that no such notification or Notice of Intended Award was sent, thereby depriving it of the City's pre-award protest procedure. Id. Plaintiff learned through its own monitoring of City agendas that the award would be considered on May 19, 2025. Id. ¶ 65.

At the May 19 meeting, plaintiff's owner addressed the Council and raised concerns about conflicts of interest, Black & White's qualifications, and the procurement process, including the City's failure to issue a Notice of Intended Award. Id. ¶¶ 66-67. Defendant Chiasson acknowledged in open session that he had forgotten to send the notice, and the Council initially voted to remove the franchise item from consideration. Id. ¶¶ 68, 70. After plaintiff's representatives left the meeting, however, the Council reintroduced the item and approved the award to Black & White without taking further public comment or restoration of the protest procedure. Id. ¶¶ 71-72.

Defendant Patty Lopez, a councilmember, abstained from the vote to approve Contract No. 2359 with Black & White, citing concerns about policy violations and favoritism, while defendant Fajardo participated in approving the award. Id. ¶¶ 73-74. Defendants Valdez and Richard Padilla, a City Attorney, were present throughout the meeting but did not advise the Council to defer the award pending correction of the

alleged procedural defects. Id. ¶ 75. Plaintiff alleges that the Council possessed exclusive and final authority to award the franchise. Id. ¶¶ 93-94.

Following the award, plaintiff submitted written objections to the City Council on May 20, 2025, concerning the evaluation criteria, alleged conflicts of interest, and manner in which the award was approved. Id. ¶ 76. On May 30, 2025, defendant Padilla instructed City staff not to respond to any emails or provide further information regarding the towing contract. Id. ¶ 77. Plaintiff alleges that this directive was issued in response to its public comments and that the directive prevented plaintiff from obtaining information or relief. Id. ¶ 78. Plaintiff again appeared before the Council on July 7, 2025, where it restated its objections, but its subsequent requests for meetings and further review were declined. Id. ¶¶ 81-84. Plaintiff alleges that the Council's approval of the award after its representatives departed, defendant Padilla's directive, and the subsequent refusal of meetings and review constituted retaliation for its objections to the procurement process. Id. ¶ 85.

## III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

"A motion to dismiss a counterclaim brought pursuant to FRCP 12(b)(6) is evaluated under the same standard as motion to dismiss a plaintiff's complaint." PageMelding, Inc. v. ESPN, Inc., No. 11-cv-06263, 2012 WL 3877686, at *1 (N.D. Cal. Sept. 6, 2012).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. DISCUSSION

Defendants move to dismiss plaintiff's (1) Equal Protection claim as to defendants Valdez, Kimball, Chiasson, and Aguirre; (2) First Amendment retaliation claim as to all defendants; and (3) Monell claim against the City. See generally Mot. The Court addresses the parties' arguments claim by claim.

### A. Equal Protection Claim Against Defendants Valdez, Kimball, Fajardo, Chiasson, and Aguirre

Plaintiff asserts two theories for its Equal Protection Claim against defendants Valdez, Kimball, Fajardo, Chiasson, and Aguirre. First, plaintiff alleges that defendants intentionally subjected it to less favorable treatment than Black & White during the 2025 towing franchise procurement, motivated in part by plaintiff's Jewish ownership. FAC ¶¶ 104-107. Second, and in the alternative, plaintiff asserts a "class-of-one" theory, alleging that defendants intentionally treated it differently from the only other similarly

situated bidder without a rational basis by denying it the mandatory notice and protest procedures established by the City's procurement rules. Id. ¶¶ 108-109.

For reasons given below, the Court concludes that the FAC fails to state an equal protection claim against defendants Valdez, Kimball, Chiasson, and Aguirre under either theory.

1. Intentional Discrimination Based On Jewish Ownership

As a preliminary matter, defendants do not move to dismiss plaintiff's equal protection claim defendant Fajardo. See generally Mot. Accordingly, plaintiff's claim against defendant Fajardo proceeds regardless of the Court's resolution of defendants' motion as to the remaining defendants.

To state a claim against the remaining defendants under this theory, plaintiff must allege that those defendants "intentionally discriminated against it on the basis of plaintiff's membership in a protected class." Diaz v. Sherman, No. 1:13-cv-01627-LJO-MJS, 2014 LX 13783, at *11 (E.D. Cal. Jan. 29, 2014). Here, the parties dispute whether plaintiff has adequately alleged discriminatory intent as to defendants Valdez, Kimball, Chiasson, and Aguirre.

In their Motion, defendants argue that plaintiff fails to allege discriminatory intent as to defendants Valdez, Kimball, Chiasson, and Aguirre because the FAC attributes discriminatory animus only to defendant Fajardo and improperly imputes that animus to the remaining defendants. Mot. at 6-7. Defendants further argue that the FAC's assertion that the surrounding circumstances "considered collectively" support an inference of intent amounts to improper group pleading. Id.

In opposition, plaintiff counters that the FAC expressly limits individual liability to conduct each defendant "personally participated in, directed, knowingly approved, or caused" and that "[w]hat the FAC pleads collectively is the evidence of intent, not liability." Opp. at 6-10. Plaintiff further argues that because discriminatory intent is rarely admitted, courts infer it from the totality of the relevant facts, and that, here, the circumstantial evidence as a whole establish discriminatory intent for each defendant against whom plaintiff brings this claim. Id.

In reply, defendants maintain that the FAC does not allege that the remaining defendants knew of or shared defendant Fajardo's animus and that their alleged conduct does not independently establish discriminatory purpose. Reply at 2-7.

It is true that that discriminatory intent may be established through circumstantial evidence, including the historical background of a challenged decision, the sequence of events leading to it, departures from established procedures, and statements by decisionmakers. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266-68 (1977). The Ninth Circuit has recognized that such circumstances, considered collectively, may support a plausible inference of intentional discrimination at the pleading stage. Ave. 6E Invs., LLC v. City of Yuma, 818 F.3d 493, 504-07 (9th Cir. 2016).

Nevertheless, because plaintiff seeks to impose individual liability under Section 1983, the FAC must allege facts supporting a plausible inference that each defendant, through his own conduct, acted with discriminatory purpose. Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009); Coleman v. City & Borough of Juneau, No. 1:23-CV-00002-SLG-KFR, 2023 WL 5508396, at *16 (D. Alaska Aug. 25, 2023) ("To prove discrimination in violation of § 1983 under the Fourteenth Amendment's Equal Protection Clause, a plaintiff must demonstrate that the *individual* defendant acted with the intent to discriminate, and allege facts showing how those defendants caused or personally participated in causing the harm alleged in the complaint.") (emphasis in original). Thus, although defendant Fajardo's alleged statement may be considered as part of the surrounding circumstances, his discriminatory intent cannot automatically be imputed to the remaining defendants. See Kawaoka v. City of Arroyo Grande, 17 F.3d 1227, 1239 (9th Cir. 1994) (declining to find a city liable because one councilmember's discriminatory remarks do not establish that "any other council member acted with discriminatory intent or that the council as a whole took the action with discriminatory intent").

Here, plaintiff relies on the following allegations to support an inference that the alleged disparate treatment was motivated by plaintiff's Jewish ownership: "(a) the statement attributed to [d]efendant Fajardo on or about May 1, 2025, made while the evaluation was underway and days before the award vote in which he participated; (b) the seventeen-minute inspection conducted the following day and the zero score for an area never entered; (c) the scoring of one point each for experience and financial strength; (d)

the character and integrity score awarded to a competitor then under federal enforcement action; (e) the City's disregard of sixteen years of concealed ownership by a former Chief of Police who had been on the competitor's payroll; (f) the complete denial of the mandatory pre-award notice and protest procedure; and (g) the decision to proceed to final award after being told in open session that the required notice had never been sent." FAC ¶ 91.

The Court recognizes that the timing of defendant Aguirre's inspection, particularly when considered alongside the alleged inaccuracies in his findings, raises questions concerning the fairness of the evaluation. It may even support an inference that he intentionally disadvantaged plaintiff. However, it does not establish that defendant Aguirre acted "because of" plaintiff's protected class because the FAC does not allege that defendant Aguirre knew of defendant Fajardo's statement, communicated with defendant Fajardo concerning the procurement, or otherwise knew of plaintiff's Jewish ownership. G.B. by & through G.P. v. United States Env't Prot. Agency, 172 F.4th 1042, 1055 (9th Cir. 2026) (articulating that discriminatory purpose requires a showing that a particular course of action was taken at least in part "because of," not merely "in spite of" its adverse effects upon an identifiable group). Thus, although the one-day interval is relevant to the sequence of events, it does not, without a factual connection between defendant Aguirre's conduct and the alleged religious animus, plausibly establish that defendant Aguirre acted because of plaintiff's protected class.

Similarly, although plaintiff alleges that the City became aware of its Jewish ownership during the 2009 procurement process, FAC ¶ 21, the FAC does not allege that defendants Valdez, Kimball, or Chiasson individually possessed that knowledge, see generally id. Indeed, there is no allegation that these defendants heard defendant Fajardo's statement, that it was communicated to them, or that they otherwise learned of plaintiff's Jewish ownership during the 2025 procurement. In short, the City's institutional knowledge and defendant Fajardo's alleged animus, without additional facts connecting them to the remaining defendants, do not plausibly establish that each acted with discriminatory purpose. See Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Accordingly, even considering the allegations collectively and drawing reasonable inferences in plaintiff's favor, the FAC does not plausibly allege that defendants Valdez, Kimball, Chiasson, or Aguirre intentionally discriminated against plaintiff "because of" its Jewish ownership. The Court therefore concludes that plaintiff has failed to state an Equal Protection claim against these defendants under its intentional-discrimination theory.

2. Class of One

Defendants next argue that plaintiff's alternative class-of-one theory is unavailable because the award of an exclusive towing franchise necessarily involves discretionary and individualized assessments. Mot. at 7-8.

Plaintiff counters that the Ninth Circuit, in Gerhart v. Lake Cty. Mont., 637 F.3d 1013, 1020-23 (9th Cir. 2010), has allowed a class-of-one claim challenging a county's discretionary permit decision to proceed—and that, as such, the Court should allow it to proceed here. Opp. at 9-10. Plaintiff further argues that its theory is separately supported by the City's denial of mandatory notice and protest procedures, which are non-discretionary. Id.

To state a class-of-one equal protection claim, plaintiff must plausibly allege that defendants intentionally treated it differently from similarly situated persons without a rational basis for the difference. Gerhart, 637 F.3d at 1022. The Supreme Court has recognized that class-of-one claims generally do not apply to governmental decisions that inherently involve subjective, individualized discretion. Engquist v. Or. Dep't of Agric., 553 U.S. 591, 603 (2008). The Ninth Circuit, however, has not categorically extended that holding to competitive public bidding. See Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592-93 (9th Cir. 2008).

First, to the extent that plaintiff relies on Gerhart, the Court is unpersuaded. Although Gerhart involved a discretionary authority, the plaintiff there presented evidence that at least ten similarly situated property owners had not been subjected to the same permit requirement and that officials departed from their usual procedures when evaluating his application. Gerhart, 637 F.3d at 1022-23. Unlike Gerhart, the FAC does not sufficiently allege that plaintiff was subjected to different evaluation standards or procedures than a similarly situated bidder. Indeed, the FAC does not allege facts showing that Black & White received a more complete inspection or was evaluated under

materially different standards, see generally id. That "Black & White Towing received a score equal to or greater than" plaintiff on the evaluation is insufficient. FAC ¶ 60. Thus, even assuming that Engquist does not foreclose a class-of-one challenge to the franchise evaluation, the FAC does not plausibly allege the differential treatment required by Gerhart.

Second, plaintiff's reliance on the City's mandatory notice and protest requirements does not establish a viable class-of-one theory. Although Enquist does not foreclose plaintiff's alternative theory based on those requirements given that they appear non-discretionary, plaintiff again fails to plausibly allege intentional differential treatment of similarly situated persons. Indeed, there is no allegation that Black & White received the notice or protest opportunity that plaintiff was denied. See generally FAC. Rather, plaintiff alleges that defendant Chiasson failed to issue the Notice of Intended Award and that the Council proceeded with the franchise award without restoring the required protest period. FAC ¶¶ 68, 72. These allegations may establish a departure from the City's procurement requirements, but they do not, without more, plausibly establish that plaintiff was singled out for different procedural treatment. The Court therefore concludes that plaintiff has not sufficiently pleaded a class-of-one equal protection theory based on the denial of the notice and protest procedure.

Accordingly, the Court **GRANTS** defendants' motion to dismiss plaintiff's equal protection claim against defendants Valdez, Kimball, Chiasson, and Aguirre, without prejudice and with leave to amend. Plaintiff's equal protection claim against defendant Fajardo remains.

### B. First Amendment Retaliation Claim Against All Defendants

To state a First Amendment retaliation claim, a plaintiff must plausibly allege that (1) it engaged in constitutionally protected activity; (2) the defendant's actions "would chill a person of ordinary firmness from continuing to engage in the protected activity"; and (3) the protected activity was a "substantial or motivating factor" in the defendant's conduct. Capp v. Cnty. of San Diego, 940 F.3d 1046, 1053 (9th Cir. 2019). The chilling test is objective as it focuses on whether the conduct would chill a person of ordinary firmness, not whether plaintiff was actually chilled. Ariz. Students' Ass'n v. Ariz. Bd. of Regents, 824 F.3d 858, 868 (9th Cir. 2016).

Here, defendants do not dispute that plaintiff has plausibly alleged it engaged in constitutionally protected activity. They maintain, however, that plaintiff has failed to plausibly allege either an adverse action or causation. See generally Mot. Moreover, defendants maintain that legislative immunity separately bars the retaliation claim against defendants Fajardo, Mendoza, Solorio, Garcia, and Lopez (hereinafter "Councilmember Defendants"). Id. The Court considers each argument in turn.

1. Adverse Action Chilling Speech

"[D]e minimis deprivations of benefits and privileges on account of one's speech do not give rise to a First Amendment claim." Blair v. Bethel Sch. Dist., 608 F.3d 540, 544 (9th Cir. 2010). The most familiar adverse actions are exercises of governmental power that are "regulatory, proscriptive, or compulsory in nature" and "have the effect of punishing someone for his or her speech." Id.

Defendants highlight that plaintiff's retaliation theory relies on the following allegations: (1) "the reintroduction and approval of the award after [p]laintiff's representatives left the chambers"; (2) "a May 30, 2025 directive to staff concerning inquiries" from plaintiff; (3) "the City's refusal to meet" with plaintiff; and (4) "the continued performance of the franchise." Mot. at 8. Defendants argue in a conclusory manner that "[n]one of these acts constitutes the type of adverse action reasonably likely to chill a person of ordinary firmness." Id. at 8-9.

Plaintiff counters that defendants' description of plaintiff's allegations "omits the most significant act"—namely, the final award of a multi-year exclusive franchise to the incumbent shortly after plaintiff publicly criticized the procurement process. Opp. at 11. Plaintiff argues that such a denial of its bid in retaliation to its speech amounts to more than a minimal deprivation. Id.

The Court concludes that the Council's final approval of the franchise constitutes a sufficiently adverse action at the pleading stage. The award concerned an exclusive, multi-year towing franchise with substantial economic significance. FAC ¶ 18. The denial of a government contracting opportunity, if undertaken in retaliation for protected speech, is not a *de minimis* consequence. Although defendants emphasize that plaintiff did not previously hold the franchise, Reply at 10-11, that does not necessarily mean that the denial of the opportunity was too insignificant to constitute adverse action. See Oscar Renda Contracting, Inc. v. City of Lubbock, 463 F.3d 378, 385 (5th Cir. 2006)

(considering Umbehr and Rutan together and finding that "the contractor—like the individual job applicant—is protected by the First Amendment if its bid is rejected in retaliation of its exercise of protected speech" even without a "prior relationship with a government entity").

Accordingly, the Court concludes that plaintiff has adequately alleged adverse action.

2. Causation and Personal Participation

Retaliatory motive may be shown through proximity in time, expressed opposition to the speech, or pretextual explanations. Coszalter v. City of Salem, 320 F.3d 968, 977 (9th Cir. 2003); Alpha Energy Savers, Inc. v. Hansen, 381 F.3d 917, 929 (9th Cir. 2004).

The Court concludes that the FAC adequately alleges that plaintiff's protected activity was a "substantial or motivating factor" in the government's adverse action. Indeed, the FAC alleges that the award was finalized within hours of plaintiff's speech, and the sequence of events was irregular: the Council removed the item after plaintiff spoke and reintroduced it only after plaintiff's representatives left, preventing any further comment. FAC ¶¶ 66-72. Although defendants offer an "obvious non-retaliatory explanation" that Black & White "had already been selected on the merits," Mot. at 10, that is a factual contention that the Court declines to resolve at the pleading stage.

However, the Court's conclusion that plaintiff has plausibly alleged retaliatory causation with respect to the Council's final approval of the franchise does not establish liability against each individual defendant. Section 1983 imposes liability only for a defendant's own conduct, and plaintiff must allege facts supporting a reasonable inference that each defendant personally participated in the alleged constitutional violation. Iqbal, 556 U.S. at 676; Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.").

Accordingly, the Court separately considers whether the FAC adequately alleges that each individual defendant personally participated in conduct motivated by plaintiff's protected speech.

*a. Defendants Aguirre, Chiasson, Kimball, Valdez, and Lopez*

Plaintiff fails to state a claim for retaliation against defendants Aguirre, Chiasson, Kimball, Valdez, and Lopez.

First, plaintiff attributes to defendant Aguirre the allegedly deficient facility inspection and inaccurate representations concerning plaintiff's qualifications, both of which preceded the May 19 meeting. FAC ¶¶ 51-57. Although plaintiff argues that defendant Aguirre's findings supplied the factual basis for the recommendation subsequently approved by the Council, Opp. at 13-14, the FAC does not allege that defendant Aguirre reaffirmed those findings, participated in the Council's reintroduction of the item and approval of the award, or otherwise undertook retaliatory action after plaintiff spoke. The Council's subsequent reliance on his earlier work does not, without more, establish that defendant Aguirre personally retaliated against plaintiff for its speech.

Second, plaintiff alleges that defendant Chiasson failed to issue the required notice before the May 19 meeting and that he "acknowledged [during the meeting] that he had simply forgotten" to do so. FAC ¶¶ 63-68. Plaintiff argues that defendant Chiasson's subsequent failure to restore the protest procedure after its protected speech constitutes retaliatory participation. Opp. at 13-14. However, the FAC does not allege facts to reasonably give rise to the inference that defendant Chiasson purposefully withheld the protest procedure in retaliation to plaintiff's speech. That defendant Chiasson may have failed to do his job or conduct damage control after realizing his mistake, without more, is insufficient to establish a retaliatory motive. As such, plaintiff fails to state a retaliation claim against defendant Chiasson.

Third, as to defendant Kimball, plaintiff alleges that he was responsible for administering the procurement, presenting the franchise award, and reviewing bid protests. FAC ¶¶ 8, 99. Plaintiff contends, as it did with defendant Chiasson, that defendant Kimball's failure to restore the protest procedure following its objection amounted to retaliatory inaction. Opp. at 14. But, again, without more, plaintiff's allegations against defendant Kimball fails to give rise to a reasonable inference that defendant Kimball's inaction was in response to its protected activity, particularly given that, even pre-speech, defendant Kimball allegedly failed to give plaintiff the notice and the protest period. As such, plaintiff fails to state a retaliation claim against this defendant.

Fourth, plaintiff alleges that defendant Valdez supervised and participated in the evaluation process, transmitted the recommendation, and attended the May 19 meeting without advising the Council to defer the award pending correction of the procedural defect. FAC ¶¶ 7, 47, 75. These allegations fail to establish that defendant Valdez personally acted in retaliation to plaintiff's speech for the same reasons already discussed.

Fifth, plaintiff alleges that defendant Lopez abstained from the vote approving the franchise because of concerns regarding policy violations and favoritism. FAC ¶ 73. Defendants argue that a retaliation claim "against a defendant who declined to support the challenged action is internally incoherent." Mot. at 9. Plaintiff counters that defendant Lopez nevertheless participated in the proceedings and failed to oppose the reintroduction of the item or request restoration of the protest procedure. Opp. at 14. Given the allegation that defendant Lopez shared plaintiff's position expressed in its protected speech, the Court concludes that plaintiff's allegations do not establish that defendant Lopez's inaction was in retaliation to that protected speech.

*b. The Councilmember Defendants—i.e., Defendants Fajardo, Mendoza, Solorio, Garcia*

As pled, plaintiff also fails to state a retaliation claim against the individual Councilmember Defendants.

Defendants argue that defendants Mendoza, Solorio, and Garcia[1] are "named only as Councilmembers" and that the FAC "pleads no individualized retaliatory conduct by any of them." Mot. at 9. Defendants further contend that their "[p]assive status as a board member is not personal involvement." Id.

Plaintiff counters that defendants Fajardo, Mendoza, Solorio, and Garcia are "not named based on their 'passive status.'" Opp. at 13. Plaintiff contends that each are alleged to have "participated in the post-speech reintroduction [of the item] and approval of the award." Id. Plaintiff specifically highlights the FAC's allegations that defendant Fajardo made the motion to approve; defendant Solario seconded it; and all four of those defendants voted in favor. Id. Plaintiff argues that a "vote is personal participation." Id.

[1] Defendants do not address defendant Fajardo's personal participation with respect to plaintiff's First Amendment claim in either their Motion or Reply.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL 'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-05352-CAS-MBKx | Date | November 9, 2026 |
| Title | Mid Valley Towing Inc v. City of San Fernando et al | | |

Although the Court agrees with plaintiff that an individual member of a governmental board may be personally liable for an action undertaken through a majority vote, Damiano v. Grants Pass School District No. 7, 140 F.4th 1117, 1153 (9th Cir. 2025), membership in a collective decision-making body does not, without more, establish an individual's participation in the challenged constitutional violation.

Here, the FAC alleges that the individual Councilmember Defendants participated in the voting process that resulted in the relevant adverse action. FAC ¶ 70, 74, 91. The FAC, however, does not allege how any particular Councilmember Defendant voted, or that the vote was unanimous.[2] See generally FAC. Without additional factual allegations, mere participation in the voting process alone does not plausibly establish that each named defendant personally participated in the allegedly retaliatory action. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983.").

The Court acknowledges that certain facts concerning the individual defendants' conduct—such as which way they voted—may not be available to plaintiff before discovery. However, the Ninth Circuit permits plaintiffs to plead facts on information and belief where those facts are "peculiarly" within the defendants' possession and control or where other factual allegations make the inference of wrongdoing plausible. Soo Park v. Thompson, 851 F.3d 910, 928-29 (9th Cir. 2017). Because plaintiff has not even pled on information and belief that the individual Councilmember Defendants voted in favor of the decision that forms the basis of plaintiff's retaliation claim (or that the decision was unanimous), the Court finds that it has failed to state a retaliation claim as against the individual Councilmember Defendants.

c. *Defendant Padilla*

As for defendant Padilla, defendants argue that his "only post-speech act is the May 30, 2025 email directing staff" not to communicate with plaintiff and that "advisory

[2] Although plaintiff explains in its opposition brief that "the motion carried 4-0," this is not alleged in the FAC. Opp. at 4; see generally FAC.

conduct of that kind . . . is insufficient personal participation to support liability." Mot. at 9-10.

Plaintiff counters that the FAC alleges that he "personally issued the May 30 directive and personally informed [p]laintiff that he would not respond further." Opp. at 13. Plaintiff further argues that defendant Padilla was also "present at the May 19 meeting and did not advise the Council to defer the award despite the admitted defect." Id.

To the extent that plaintiff's retaliation claim against defendant Padilla rests on the Council's approval of the franchise award, it fails. Allegations that defendant Padilla was present at the meeting and did not prevent the Council from voting, without more, fail to plausibly establish his personal participation in the allegedly retaliatory award.

However, plaintiff's retaliation claim against defendant Padilla rests also on conduct distinct from the Council's approval of the franchise award—namely, his alleged directive instructing City staff not to respond to emails or provide further information concerning the towing contract. FAC ¶ 77-78. Unlike his alleged inaction at the Council meeting, the issuance of this directive constitutes affirmative conduct personally attributable to him.

Whether that directive would "chill a person of ordinary firmness from continuing to engage in the protected activity" poses a question that the Court cannot resolve against plaintiff at the pleading stage. Moreover, to the extent defendants contend that plaintiff continued to engage in protected speech after the directive, the chilling inquiry is objective and does not require proof that plaintiff was actually deterred.

Accordingly, the Court concludes that plaintiff has sufficiently alleged a retaliation claim against defendant Padilla.

3. Legislative Immunity[3]

Although the Court concludes that plaintiff has failed to state a First Amendment retaliation claim against all of the individual defendants, the Court briefly addresses

[3] Defendants only argue legislative immunity with respect to plaintiff's retaliation claim. See Mot. at 10; Reply at 12.

defendants' alternative argument that legislative immunity bars plaintiff's retaliation claim against the Councilmember Defendants.

Defendants argue that the Councilmember Defendants' "vote to award the exclusive franchise was legislative" because it was "a formal legislative vote and a discretionary decision with significant budgetary and revenue implications." Mot. at 10-11.

Plaintiff counters that the burden is on defendants to establish immunity and that because defendants failed to address the four factors that the Ninth Circuit identified for the purposes of determining whether an alleged governmental act is legislative or not, their argument fails. Opp. at 14-15. Plaintiff argues that, in any event, all four of the factors weigh against immunity here. Id.

The Court agrees with plaintiff.

Whether legislative immunity applies depends on "the nature of the act," not the title of the official. Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998). The four factors that the Ninth Circuit considers are: (1) whether the act involves ad hoc decisionmaking or the formulation of policy; (2) whether the act applies to a few individuals or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation. Kaahumanu v. County of Maui, 315 F.3d 1215, 1220 (9th Cir. 2003).

Here, the relevant governmental act—i.e., the awarding of the franchise—(1) involves ad hoc decisionmaking because it is based on a comparative, subjective evaluation of competitors; (2) affects only two companies, one of which received the franchise while the other did not; (3) is not formally legislative because the Council acted on a motion to approve Contract No. 2359, not by ordinance or budget enactment; and (4) the vote established no rule of general application, imposed no tax, and appropriated no funds as it merely selected a vendor. As such, legislative immunity will not shield the Councilmembers from liability here.

Accordingly, defendants' motion to dismiss plaintiff's First Amendment retaliation claim is **GRANTED** as to defendants Aguirre, Chiasson, Kimball, Valdez, Lopez, Fajardo, Mendoza, Solorio, and Garcia without prejudice and with leave to amend, but **DENIED** as to defendant Padilla.

### C. Monell Claim Against the City

A municipality may be held liable under Section 1983 where a constitutional violation results from: (1) a formal policy or "longstanding practice or custom"; (2) a decision by an official with "final policymaking authority"; or (3) ratification by such an official of a subordinate's unconstitutional act and its basis. Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992). The Court first address the parties' arguments concerning the second pathway.

Defendants argue that this theory of Monell liability fails because the Council merely applied existing procurement standards in selecting between two bidders, rather than establishing municipal policy. Mot. at 11-13; Reply at 12-13. Defendants further contend that authority to make a final contract award does not necessarily constitute final policymaking authority, and that the Council's knowledge of the omitted notice and plaintiff's objections does not establish a deliberate decision to engage in unconstitutional conduct. Id.

Plaintiff counters that the Council possessed exclusive and unreviewable authority over the franchise award and that the Council's awarding of the franchise to the incumbent after plaintiff's protected speech was a deliberate choice. Opp. at 16-19.

The Court concludes that plaintiff has sufficiently alleged municipal liability under the second pathway. A single decision may constitute official municipal policy where it is made by an official or entity possessing final policymaking authority over the subject matter. Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) ("[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy."); see, e.g., Owen v. City of Independence, 445 U.S. 622 (1980) (City Council passed resolution firing plaintiff without a pretermination hearing); Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981) (City Council canceled license permitting concert because of dispute over content of performance).

Although final decisionmaking authority does not necessarily establish final policymaking authority, the FAC alleges that the Council possessed exclusive authority to award towing franchises and that its decisions were not subject to review by any other municipal body. FAC ¶ 93. These allegations, taken true at the pleading stage, plausibly support plaintiff's Monell theory of liability.

The FAC further alleges that the Council made the decision to award the franchise to the incumbent after plaintiff publicly criticized the procurement process, despite initially removing the item from consideration and having been informed that plaintiff had not received the required notice. Id. ¶¶ 66-74, 126-129. As discussed above, the timing and sequence of these events plausibly support an inference that plaintiff's protected speech was a substantial or motivating factor in the Council's final decision. As such, plaintiff has plausibly alleged a constitutional violation resulting from a decision attributable to the City's final policymaking body.

Because plaintiff has adequately alleged municipal liability under the final-policymaker theory, the Court need not address plaintiff's alternative theories of ratification and longstanding custom or practice.[4]

Defendants' motion to dismiss plaintiff's Monell claim against the City is **DENIED**.

## V. CONCLUSION

In accordance with the foregoing, defendants' motion to dismiss plaintiff's equal protection claim against defendants Valdez, Kimball, Chiasson, and Aguirre, is **GRANTED**, without prejudice and with leave to amend.

Defendants' motion to dismiss plaintiff's First Amendment retaliation claim is **GRANTED** as to defendants Aguirre, Chiasson, Kimball, Valdez, Lopez, Fajardo,

[4] However, to the extent that plaintiff's Monell claim is based on the alleged disparate treatment of plaintiff on the basis of its protected class, it fails for the same reasons explained *supra*—namely, that the allegation that defendant Fajardo made a discriminatory remark, without more, fails to plausibly establish that the Council acted with a discriminatory purpose, given that his remark cannot be properly imputed onto others.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL 'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-05352-CAS-MBKx | Date | November 9, 2026 |
| Title | Mid Valley Towing Inc v. City of San Fernando et al | | |

Mendoza, Solorio, and Garcia, without prejudice and with leave to amend, but **DENIED** as to defendant Padilla.

Defendants' motion to dismiss plaintiff's Monell claim against the City is **DENIED**.

Plaintiff shall file a second amended complaint, if any, within fourteen (14) days of this order.

IT IS SO ORDERED.

| | | | |
|---|---|---|---|
| | 00 | : | 05 |
| Initials of Preparer | CMJ | | |